IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDGAR TORRES, | ) |
| Plaintiff, | ) ) ) |
| v. | )   Case No.   21-cv-468-RJD |
| RON SKIDMORE and ROB JEFFREYS, | ) ) ) |
| Defendants. | ) |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Edgar Torres, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). Plaintiff alleges Menard staff was deliberately indifferent to his need for hearing aids. Plaintiff's complaint was screened pursuant to 28 U.S.C. § 1915A and he proceeds on the following claims:

> Count One:   Eighth Amendment deliberate indifference claim against Ron Skidmore for denying Plaintiff outside care for his hearing loss.
>
> Count Two:   ADA claim for denying Plaintiff a hearing aid.

Rob Jeffreys was added as a defendant only in his official capacity as the IDOC Director as the proper defendant for Plaintiff's ADA claim (*see* Doc. 8 at 4). Pursuant to Rule 25(d), the current IDOC Director, Latoya Hughes, is automatically substituted for Jeffreys.

This matter is now before the Court on the Motion for Summary Judgment filed by Defendants Ron Skidmore and Rob Jeffreys (Doc. 40). Along with their motion, Defendants filed a Rule 56 Notice informing Plaintiff of his obligation to file a response to their motion for summary judgment and advising him of the perils of failing to respond (*see* Doc. 42). Plaintiff's response

to Defendants' motion was due by March 27, 2023. No response, or any other filings, have been received from Plaintiff as of the date Defendants' filing[1]. The Court notes, however, that Plaintiff verified his complaint. The Seventh Circuit has recognized that although it does not "commend" the practice, a party may rely on the portions of a verified complaint that satisfy the requirements set forth in Federal Rule of Civil Procedure 56(c) in responding to a motion for summary judgment. *Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996). As such, and in light of Plaintiff's status as a *pro se* litigant, the Court will accept Plaintiff's verified complaint as a response to the motion for summary judgment.

**Factual Background**

Plaintiff's claims arose while he was incarcerated at Menard Correctional Center (Deposition of Edgar Torres, Doc. 41-1 at 18). Around early 2000, Plaintiff noticed he had trouble hearing in his left ear due to a gun being fired near his ear prior to his incarceration (*id.* at 22). Plaintiff underwent a hearing screening at Menard on September 21, 2020 (*id.* at 24; *see* Doc. 41-4 at 6-8). Plaintiff passed the screening for his right ear, but did not pass the screening for his left ear (*id.*). It was noted that Plaintiff was to be referred to a medical provider to request an audiogram (*id.*).

Plaintiff filed a grievance dated October 16, 2020 advising the institution that he failed his left ear hearing screening and was awaiting a referral for an audiogram so he could receive a hearing aid (Doc. 41-1 at 27-28; *see* Doc. 1 at 14-15). The Grievance Officer responded on October 19, 2020, stating in part, "The ADA Coordinator advised that the offender passed the

---

[1] Prior to the filing of Defendants' motion, Plaintiff filed a Motion to Withdraw Complaint (Doc. 34) on December 27, 2022, wherein he requested that the Court withdraw his complaint if the undersigned declined to appoint him counsel. The Court denied his motion, declined to appoint him counsel for reasons stated in the record, and advised Plaintiff that if he did not wish to proceed on his claims in this case that he needed to file a motion to voluntarily dismiss the same (Doc. 35). No motion seeking to voluntarily dismiss the claims was filed.

onsite hearing test on 4/5/2019 and 9/21/2020" (Doc. 1 at 17).  At the time of the Grievance Officer's response, Defendant Ron Skidmore was a Corrections Nurse Supervisor and ADA Coordinator (Declaration of Ron Skidmore, Doc. 41-2 at ¶ 1).

Following submission of his October 2020 grievance, Plaintiff contacted an outside entity, Equip for Equality, regarding his hearing screening and complaint concerning a lack of a referral to an outside specialist (Doc. 41-1 at 29).  Equip for Equality was initially advised by the IDOC that Plaintiff passed his September 2020 hearing test, but at the urging of Plaintiff and upon further inquiry, Equip for Equality notified Plaintiff in a letter dated March 3, 2021 that IDOC advised they were "working on correcting their mistake of mis-recording [Plaintiff's] initial failed hearing screening to the ADA Coordinator" and had scheduled Plaintiff to see an audiologist (Doc. 1 at 18-21).

On February 16, 2021, a note in Plaintiff's medical record indicates that his case was presented to "collegial" on February 11, 2021 for an audiology evaluation and the request was approved (Doc. 41-1 at 44; *see* Doc. 41-4 at 1).  Another note in Plaintiff's medical record on June 8, 2021 indicates that Plaintiff was scheduled for an audiology evaluation, and he was seen by an outside physician specializing in Otolaryngology on September 2, 2021 (*see* Doc. 41-4 at 2, 12-19).  The result of the September 2, 2021 evaluation indicated that Plaintiff had "a false/exaggerated hearing loss in his left ear" (*see id.* at 19).  The provider found Plaintiff had normal middle ear function in both ears (*see id.*).  No follow-up was recommended (*see id.*).  Plaintiff has never been informed by a medical provider that he needed hearing aids, nor has he been prescribed hearing aids by a medical provider (Doc. 41-1 at 47-48).

Plaintiff testified that his hearing issues caused him to miss meal and call lines, and he needs to ask people to repeat themselves (Doc. 41-1 at 50-51).  Plaintiff also asserted he is in

constant pain (Doc. 1 at ¶ 16).

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

### *Count One – Eighth Amendment deliberate indifference claim against Ron Skidmore*

Plaintiff contends Ron Skidmore was deliberately indifferent for denying him outside care for his hearing loss. More specifically, in his complaint, Plaintiff alleges Skidmore, the ADA Coordinator at Menard at all times relevant, "lied" in responding to Plaintiff's October 16, 2020 grievance insofar as Skidmore erroneously indicated that Plaintiff had passed his hearing test.

Skidmore asserts he is entitled to summary judgment on Plaintiff's Eighth Amendment claim because Plaintiff cannot establish that his hearing loss constituted a serious medical need,

there is no evidence Plaintiff suffered any harm, and no reasonable jury could find that Skidmore acted with deliberate indifference.

The Supreme Court recognizes that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, Plaintiff must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'." *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough.

*Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987).  Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653.  A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs."  *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

Plaintiff's claim against Skidmore clearly does not survive summary judgment because no jury could find that Skidmore acted with deliberate indifference to Plaintiff's complaints of hearing loss.  While it is undisputed that there was an error made by the institution and, based on reasonable inferences, possibly Defendant Skidmore, in informing the Grievance Officer that Plaintiff had passed his September 2020 hearing screening, said error was ultimately corrected and, within four months of this error, Plaintiff's case was presented to collegial for review in February 2021.  While it ultimately took until September 2, 2021 for Plaintiff's hearing to be evaluated by an outside specialist, Skidmore is not able to make referrals to outside specialists, as those determinations are made by medical doctors (Doc. 41-2 at ¶ 2).  Thus, even when viewing all of the evidence in the light most favorable to Plaintiff, no jury could find that a brief delay in processing Plaintiff through collegial review to see an outside specialist evidenced deliberate indifference to his condition.  This is even more pronounced when, as here, there is no evidence Plaintiff was harmed by this delay.  Indeed, upon referral to a specialist it was determined Plaintiff required no follow-up or any additional treatment related to his hearing.  Because there is no evidence in the record by which a reasonable jury could find Defendant Skidmore acted with deliberate indifference, he is entitled to summary judgment on Count One.  Based on this finding,

the Court need not consider Skidmore's additional arguments, including qualified immunity.

***Count Two – Claim under the Americans with Disabilities Act (ADA)***

In Count Two, Plaintiff contends the IDOC violated the Americans with Disabilities (ADA) for failing to provide him with a hearing aid. Defendant Latoya Hughes is the proper defendant in this Count in her official capacity as the current Acting Director for the IDOC.

In the prison context, a plaintiff can make out a prima facie case of discrimination under the ADA by showing: (1) he is a qualified person; (2) with a disability; (3) the Department of Corrections denied him access to a program or activity because of his disability or otherwise subjected him to discrimination; and (4) the denial or discrimination was by reason of his disability. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012), citing 29 U.S.C. § 705(2)(B); *Wis. Cmty. Serv. v. City of Milwaukee*, 465 F.3d 737, 746 (7th Cir. 2006); *Foley v. City of Lafayette*, 359 F.3d at 928 (7th Cir.2004); *Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 119 (7th Cir. 1997). Furthermore, in order for Plaintiff to recover compensatory damages, he must show "intentional conduct (and not merely negligence)," which has been interpreted to mean he must show the defendant "acted with deliberate indifference" to rights conferred by the ADA. *Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022) (citations omitted).

The ADA designates three categories of disability: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

Defendant asserts Plaintiff cannot meet his threshold burden because there is not sufficient evidence in the record that he is a qualified individual with a disability under the ADA. In support of this argument, Defendant relies on the fact that no medical provider has informed Plaintiff he is a candidate for hearing aids or that Plaintiff was ever prescribed the same. In effect, Defendant

urges the Court to find that Plaintiff does not have the hearing loss and disability he complains of based on the lack of corroborating medical evidence. At this stage of the proceedings, such discrepancies in the record are merely genuine issues of material fact.

The record, however, does not support a finding that Plaintiff is entitled to any damages under the ADA. First, Plaintiff's complaint makes no request for injunctive relief (*see* Doc. 1 at 7). Moreover, even if the Court could interpret the complaint as requesting injunctive relief, Plaintiff's complaint regarding his hearing aid occurred at Menard, but he is no longer at that institution. It is well established that when a prisoner is transferred or released from IDOC custody his claims for injunctive relief are moot. *See Easterling v. Pollard*, 528 F.App'x 653, 656 (7th Cir. 2013) (citing *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012); *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011)); *see also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996). Said relief is moot unless the prisoner "can demonstrate that he is likely to be retransferred." *Higgason*, 83 F.3d at 811 (citation omitted); *see also Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011). Here, there is no evidence that Plaintiff is likely to be transferred back to Menard. For these reasons, no injunctive relief is available to Plaintiff under Count Two.

With regard to the issue of compensatory damages under the ADA, as mentioned previously, Plaintiff must show prison officials acted with deliberate indifference, meaning they "*knew* that harm to a federally protected right was substantially likely and … *failed* to act on that likelihood." *Hildreth v. Butler*, 960 F.3d 420, 431 (7th Cir. 2020) (quoting *Lacy v. Cook Cnty.*, 897 F.3d 847, 862 (7th Cir. 2018)) (emphasis in original). As fully explained above, there is no basis for finding Defendant Skidmore acted with deliberate indifference in failing to ensure Plaintiff was provided a hearing aid. Indeed, the record establishes the opposite regarding Skidmore and Menard staff generally. At most, the staff was negligent in failing to accurately

report Plaintiff's hearing screening results from September 2020. Ultimately, this error was corrected and Plaintiff was sent to an outside specialist who determined Plaintiff required no further treatment or any follow-up. There is also no evidence Plaintiff has been prescribed or otherwise advised by a medical professional that he requires a hearing aid. As such, there is no basis to find that prison officials acted with deliberate indifference to Plaintiff's hearing condition and, therefore, there is no basis for awarding Plaintiff the compensatory damages Plaintiff seeks under the ADA.

As the above presents a basis for summary judgment on Count Two that was not raised by Defendant Hughes, Federal Rule of Civil Procedure 56(f) requires Plaintiff receive notice and a reasonable time to respond. Accordingly, on or before **August 21, 2023**, Plaintiff shall file his objections to the decision to grant summary judgment in favor of Defendant Hughes on Count Two on the basis that there is no relief available for Plaintiff under the ADA.

## Conclusion

Based on the foregoing, the Motion for Summary Judgment filed by Defendants Ron Skidmore and Rob Jeffreys (Latoya Hughes) (Doc. 40) is **GRANTED** as to Count One and **TAKEN UNDER ADVISEMENT** as to Count Two.

The Clerk of Court shall enter judgment in favor of Defendant Ron Skidmore and against Plaintiff Edgar Torres.

Plaintiff is advised that his failure to provide his objections to the Court's decision to grant summary judgment in favor of Defendant Hughes on Count Two on or before August 21, 2023 will result in the entry of summary judgment in favor of Defendant Hughes.

**IT IS SO ORDERED.**

**DATED: August 1, 2023**

*s/* *Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**